**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 18-12487-BFK |
| BOGART CHU, ) | Chapter 13 |
| ) | |
| Debtor. ) | |

**MEMORANDUM OPINION AND ORDER:**
**(A) OVERRULING DEBTOR'S OBJECTION TO CLAIM**
**NO. 8-1; AND (B) SUSTAINING OBJECTION TO CONFIRMATON**
**OF DEBTOR'S AMENDED CHAPTER 13 PLAN**

This matter came before the Court for a hearing on: (a) the Debtor's Objection to Claim No. 8-1 of PPE Casino Resorts Maryland, LLC, t/a Maryland Live! Casino ("PPE") (Docket No. 28); and (b) PPE's Objection to Confirmation of the Debtor's Amended Chapter 13 Plan. Docket No. 16. PPE filed a Memorandum in Support of its Objection to Confirmation of the Debtor's Amended Plan. Docket No. 16-1. The Debtor filed a Memorandum in Support of Confirmation. Docket No. 31. The Court held a hearing on February 7, 2019, at which PPE and the Debtor were represented by counsel. The Chapter 13 Trustee also was present at the argument.

For the reasons stated below, the Court will: (a) overrule the Debtor's Objection to PPE's Proof of Claim; and (b) sustain PPE's Objection to confirmation of the Debtor's Plan.

**Findings of Fact**

The following facts are not genuinely in dispute.

A. *Mr. Chu's Debt to PPE*.

1.  The Debtor, Bogart Chu, resides in Falls Church, Virginia. Docket No. 1 (Voluntary Petition). He is employed as a Systems Engineer with Blue Glacier Management Group, Inc. in Arlington, Virginia. *Id.*, Schedule I.

2. In September 2015, Mr. Chu executed an Application for Casino Credit with Maryland Live! in the State of Maryland. Docket No. 16-1, Ex. B. The Credit Agreement contained the following choice of law provision:

> I agree that this application, the Marker Signing Privileges, all credit issued by Maryland Live! Casino and all Markers signed by me shall be governed, construed and interpreted pursuant to the laws of the State of Maryland (without regard to choice of law principles).

*Id.*, Ex B, p. 17.

3. The Credit Agreement also contained a consent to jurisdiction and venue in the Maryland courts. *Id.* ("I hereby consent and submit to the exclusive jurisdiction of the courts of the State of Maryland and of the United States District Court for the District of Maryland, if a basis for federal jurisdiction exists…. I agree that venue shall be proper in any circuit court of the State of Maryland selected by the Lender or in the United States District Court for the District of Maryland if a basis for federal jurisdiction exists and waive any right to object to the maintenance of a suit in any of the state or federal courts of the State of Maryland on the basis of improper venue or of inconvenience of forum.")

4. Pursuant to the terms of the Credit Agreement, Mr. Chu obtained credit in the amount of $10,000.00, which was later increased to $15,000.00. *Id.*, Ex. B, p. 18 (Maryland Live! Casino Credit TTO Increase). This amount was increased again to $20,000.00. *Id.* It was then decreased back to $10,000 before it was ultimately increased back to $15,000.00. *Id.*, Ex. B, pp. 19-20.

5. On June 22, 2017, Mr. Chu, executed a negotiable instrument commonly known as a Marker in favor of PPE in the amount of $15,000.00. *Id.*, Ex. C, pp. 22-23. The Marker was returned twice to PPE for insufficient funds. *Id.*

B. *Mr. Chu Files for Chapter 13*.

6. Mr. Chu filed a Voluntary Petition under Chapter 13 with this Court on July 16, 2018. Docket No. 1.

7. PPE filed Proof of Claim No. 8-1, asserting an unsecured claim in the amount of $17,336.00.

8. Mr. Chu's Amended Chapter 13 Plan calls for him to pay $2,190.00 per month to the Chapter 13 Trustee for 60 months, for a total of $131,400. Docket No. 12, ¶ 2.

9. The Amended Plan provides for a 52% return to unsecured creditors. *Id*., ¶ 5(A). It separately classifies the PPE debt (and other gambling debts to MGM Grand Las Vegas and MGM National Harbor), and provides a 0% return to these creditors on the ground that the debts violate public policy. *Id*., ¶ 5(B).[1]

10. PPE, as noted, objected to the Debtor's Amended Chapter 13 Plan.

11. The Chapter 13 Trustee supported the separate classification of the PPE claim in the Debtor's Amended Plan on the ground that casino debt is different from other creditors' claims. He did not take a position on the choice of law and public policy questions addressed below.

## Conclusions of Law

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core

---

[1] The Debtor objected to both of the MGM claims as well. Docket Nos. 26, 27. The Court sustained the Debtor's Objections to these claims on the ground that the Objections were properly served and MGM defaulted by not responding to the Objections. Docket Nos. 38, 39.

proceeding under 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against the estate) and (L) confirmations of plans.

### I.     Separate Classification.

Bankruptcy Section 1322(b)(1) provides as follows:

Subject to subsections (a) and (c) of this section, the plan may –

designate a class or classes of unsecured claims, as provided in section 1122 of this title, *but may not discriminate unfairly* against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims[.]

11 U.S.C. § 1322(b)(1) (emphasis added).

Separate classification usually arises in the context of classifying non-dischargeable debts such as student loans for which the debtor may continue to be liable after her discharge; there is an incentive to treat non-dischargeable debts separately, and more favorably, than ordinary, dischargeable debts. *See, e.g., In re Birts*, 2012 WL 3150384 (E.D. Va. 2012) (reversing bankruptcy court's decision to allow separate classification and treatment of a student loan claim). The difficulty in applying Section 1322(b)(1)'s "unfair discrimination" test is that the statute allows some level of discrimination, but it forbids *unfair* discrimination. *Id.,* at *2 ("courts have not settled on a uniform test to assess whether a classification 'unfairly discriminates' within the meaning of the statute.")

The Debtor, joined by the Chapter 13 Trustee, argues that separate classification is justifiable here because the Debtor's gambling-related debts are different than ordinary credit card debt or other unsecured debt. According to the Debtor and the Trustee, the other creditors provided actual credit, goods or services, while Maryland Live! only provided credit to gamble within its own facility – in the Trustee's view, "the casino never loses." This argument, however,

loses sight of the fact that gambling is inherently a risk-taking opportunity and there is the cognizable risk that the casino could lose more than the credit that it affords to the debtor (albeit, it is generally acknowledged that in the long run, the odds favor the house). The Court does not see how affording the Debtor credit to gamble is any different for classification purposes than unsecured debts for other entertainment venues, such as concerts, movie theaters or season tickets for sports teams.

Mr. Chu's Schedules indicate that he has $267,112.00 in unsecured debt at the time that he filed his petition, including the disputed PPE indebtedness. Docket No. 1, Schedule E/F, p. 31. Subtracting the PPE Debt of $17,336.00, and the now-disallowed MGM claims totaling $23,137.00, the total unsecured debt would be $226,639.00, for which Mr. Chu's Plan proposes to pay a 52% dividend. If the PPE claim is added back in to the claims pool, and is treated ratably with the other unsecured debts, Mr. Chu would pay all of his unsecured creditors roughly 49% on their claims. Alternatively, Mr. Chu would have to increase his monthly Plan payment by approximately $150.25 in order to maintain the 52% dividend to all of the unsecured creditors including the PPE claim.[2]

PPE's debt is an unsecured debt just like all of the Debtor's other unsecured debts. The Debtor's Plan requires him to pay 52% to his non-priority unsecured creditors and nothing to PPE. The basis for the Debtor's separate classification of the PPE claim is that the Debtor asserts that the claim is unenforceable as a matter of public policy. *See* Plan, ¶ 5(B). Assuming that the PPE debt represents an allowed unsecured claim (*See* Part II, below), the Court finds that the

---

[2] The ultimate percentage of the distribution to unsecured creditors could be higher or lower, depending on whether all of the scheduled creditors file proofs of claim, as well as whether any unscheduled creditors file claims. If scheduled creditors don't file claims, the percentage increases to the unsecured creditors. If unscheduled creditors file claims the percentage decreases accordingly.

Debtor's separate classification of the claim is not justifiable and represents unfair discrimination. The Court addresses whether or not the claim is allowable, below.

The Court, therefore, sustains PPE's Objection to confirmation of the Debtor's Amended Plan on the ground of unfair discrimination.

### II. Whether the Debt is an Enforceable Claim.

A properly filed proof of claim constitutes prima facie evidence of the validity and amount of the claim. Bankruptcy Rule 3001(f). When a claim is objected to, the initial burden is on the objecting party. *In re Haymarket Transp., Inc*., Case No. 09-20389-SSM, 2011 WL 1871112, at *2 (Bankr. E.D. Va. 2011). If the objecting party meets its burden in objecting to the validity or the amount of the claim, then the burden shifts to the claimant. *Id*.; *see also In re Falwell*, 434 B.R. 779, 784 (Bankr. W.D. Va. 2009); *In re Williams-Johnson*, Case No. 00-61211-DOT, 2006 WL 384989, at *2 (Bankr. E.D. Va. 2006). In this case, the Debtor's Objection to PPE's claim presents a single legal issue – whether a gambling debt legally contracted in another State under a contract containing choice of law, submission to jurisdiction and venue provisions represents an enforceable claim.[3]

> The Debtor relies on Virginia Code Section 11-14, which states as follows:
>
> Except as otherwise provided in this section, all wagers, conveyances, assurances, and all contracts and securities whereof the whole or any part of the consideration is money or other valuable thing won, laid, or bet, at any game, horse race, sport or pastime, and all contracts to repay any money knowingly lent at the time and place of such game, race, sport or pastime, to any person for the purpose of so gaming, betting, or wagering, or to repay any money so lent to any person who shall, at such time and place, so pay, bet or wager, shall be utterly void.
>
> Notwithstanding any other provision of law, a contract governing the distribution of state lottery proceeds shall be valid and enforceable as between the parties to the contract.

---

[3] The question is not whether PPE could obtain a judgment in Virginia for the debt. Absent the Debtor's bankruptcy filing, PPE could have sued the Debtor in Maryland and obtained a judgment which would have been entitled to full faith and credit in Virginia.

Va. Code § 11-14.

In Maryland, on the other hand, gambling debts contracted at State-sanctioned casinos are enforceable in Maryland's courts. *See* Md. Code Ann., State Gov., §§ 9-1A-01, *et seq*. The question is whether Mr. Chu's agreement to the application of Maryland law is enforceable, or whether the choice of law provision in the Credit Agreement violates Virginia's public policy so fundamentally that the choice of law term cannot be given effect.

Two decisions, neither of them recent, from the Eastern District of Virginia have addressed the enforceability of gambling debts from other States, reaching opposite results. In *Resorts Int'l Hotel, Inc. v. Agresta*, 569 F. Supp. 24 (E.D. Va. 1983), Resorts International sued Mr. Agresta in the Eastern District of Virginia for gambling debts incurred at the Resorts Casino in New Jersey. Relying in part on Va. Code § 11-14, and in part on the case of *Kennedy v. Annandale Boys Club, Inc*., 272 S.E.2d 38 (Va. 1980) (which held that gambling debts incurred in Virginia are unenforceable), Judge Warner dismissed Resorts' complaint on public policy grounds.

About fifteen years later, Judge Ellis decided *Rahmani v. Resorts Int'l Hotel, Inc.,* 20 F. Supp.2d 932 (E.D. Va. 1998). In *Rahmani*, Ms. Rahmani sued Resorts to recover monies that she had lost over the years ($3.8 million over a thirteen-year period), arguing that her contracts with Resorts were unenforceable under the laws of Virginia, where she resided. Judge Ellis first noted that "the laws of the place of contracting govern the validity of a contract." *Id*., at 934, citing *Fuisz v. Selective Ins. Co*., 61 F.3d 238, 241 (4th Cir. 1995); *Woodson v. Celina Mut. Inc. Co*. 177 S.E.2d 610 (Va. 1970). Although Judge Ellis noted the issue was not "free from doubt," he applied New Jersey law and dismissed the Plaintiff's claims.

Judge Ellis also examined the applicability of Va. Code § 11-15, which allows parties to recover amounts lost in gambling contracts within three months of the loss (thereby modifying the common law rule that for illegal contracts the court will leave the parties where it finds them). He held that Section 11-15 "cannot be applied to gambling losses that occur lawfully outside of Virginia." He went on to say: "A state cannot invalidate the lawful statutes of another state or penalize activity that lawfully occurs within another state." *Id.*, at 936. Although Mr. Chu's counsel attempts to distinguish *Rahmani* on the ground that the Plaintiff, Ms. Rahmani, was seeking to recover on her out-of-state gambling debts, the Court sees this as a distinction without a difference. Mr. Chu is doing precisely what Ms. Rahmini attempted to do – avoid legal responsibility for his out-of-state gambling debts.

Mr. Chu argues that the choice of Maryland law in his Credit Agreement is unenforceable because it contravenes Virginia's public policy against enforcing gambling debts. Choice of law provisions in contracts are looked on with favor and will be enforced absent unusual circumstances. *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Further, although it is true that there is a public policy exception to the application of foreign law in Virginia, "not every statutory provision constitutes a fundamental policy of a state." *Kunda v. C.R .Bard, Inc.,* 671 F.3d 464, 467 (4th Cir. 2011); *Volvo Constr. Equipment North America, Inc. v. CLM Equipment Co., Inc.*, 386 F.3d 581, 607 (4th Cir. 2004). "Merely because one state's law differs from Virginia's does not, ipso facto, justify refusal to adhere to comity's principles." *Chesapeake Supply & Equipment Co. v. J.I. Case Co.*, 700 F. Supp. 1415, 1421 (E.D. Va. 1988). "Denial of comity is generally limited to 'something immoral [or] shocking to one's sense of right.'" *Id.*, citing *Tate v. Hain*, 25 S.E.2d 321, 325 (Va. 1943).

How fundamental is Virginia's public policy against gambling in 2019? The answer, in the Court's view, is: not very. The Court cannot conclude that the public policy of Virginia against gambling is so fundamental that the Court should ignore the choice of law provision in Mr. Chu's Credit Agreement. Virginia has both Mega Millions and Powerball. It has Scratchers, Bank a Million, Cash4Life, Cash 5, Pick 4, and Pick 3. *See generally* https://valottery.com. It has "Print N' Play" games online – Bingo, Blackjack and Crossword. *See, e.g.,* https://valottery.com/PrintNPlay?category=bingo. The Virginia Lottery claims to have generated **$9,008,554.000.00** in profits for the Virginia public schools, grades K-12, since 1999. https://valottery.com/media/.

More recently, Virginia approved the re-opening of Colonial Downs, a horse racetrack in New Kent County. The facility, which is planned to re-open in the Summer of 2019 (it previously hosted racing from 1997 to 2014), will include historical horse racing (HHR) gaming devices, in addition to pari-mutuel wagering. https://www.colonialdowns.com/. *See also* "Casino-Style Gambling is Coming to Virginia. Here's What Happens Next," Richmond Times Dispatch (April 29, 2018) ("For a historically conservative state that has resisted the neon allure of casinos, Virginia seems headed for a gambling boom.") https://www.richmond.com/news/virginia/government-politics/casino-style-gambling-is-coming-to-virginia-here-s-what/article_bb464ce6-ff99-5cbc-9afb-9c4aa6763fd3.html.[4]

---

[4] Pari-mutuel betting is a system of betting where the winners share the pot, after deducting the house's take. https://www.horseracing.com/wagering/parimutuel/. HHR uses machines that allow players to wager on any one or more of thousands of races that have already been run. The machine will not show any identifying information such as the time or date of the race or the identity of the horses or the jockeys (for obvious reasons). Players can choose horses using a "Skill Graph" chart which shows such information as the jockeys' winning percentages. Alternatively, bettors can use the "handi-helper" feature, which will make selections automatically for the player. http://racingresourcegroup.com/index.php/horse-slots/. This last form seems to be the purest form of gambling, completely untethered to any skill or knowledge of the odds on the part of the gambler.

The Court finds that, although Va. Code 11-14 remains on the books, Virginia's public policy against enforcing gambling debts is no longer so fundamental that the Court should reject the application of Maryland law. The Court, therefore, will overrule the Debtor's Objection to PPE's claim and sustain PPE's Objection to the Debtor's Amended Chapter 13 Plan.

**Conclusion**

For the foregoing reasons, it is **ORDERED**:

1. The Debtor's Objection to the PPE Proof of Claim is overruled.

2. PPE's Objection to the Debtor's Amended Chapter 13 Plan is sustained. The Debtor will have 21 days within which to file a Second Amended Chapter 13 Plan.

3. The Clerk will mail copies of this Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: Apr 10 2019

Alexandria, Virginia

/s/ Brian F. Kenney
Brian F. Kenney
United States Bankruptcy Judge

Entered on Docket: April 11, 2019

Copies to:

Bogart Chu
3506 Chambray Way
Falls Church, VA 22042
*Chapter 13 Debtor*

Robert R. Weed, Esquire
1376 Old Bridge Rd
Suite 101-4
Woodbridge, VA 22192
*Counsel for Debtor*

Jodie E. Buchman, Esquire
201 N. Charles Street, Suite 2600
Baltimore, MD 21201
*Counsel for PPE Casino Resorts Maryland, LLC*

Thomas P. Gorman, Esquire
300 N. Washington St. Ste. 400
Alexandria, VA 22314
*Chapter 13 Trustee*